# United States Court of Appeals
# for the Eleventh Circuit

---

**HOWARD SCHLEIDER and FELICE VINARUB, as Co-Personal Representatives for THE ESTATE OF SARA SCHLEIDER, Deceased,**

*Plaintiff-Appellee,*

v.

**GVDB OPERATIONS, LLC, a Florida Limited Liability Company d/b/a/ GRAND VILLA OF DELRAY EAST, JSMGV MANAGEMENT COMPANY, LLC, a Florida Limited Liability Company,**

*Defendants-Appellants.*

---

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 9:21-cv-80664-WPD

---

## PETITION FOR PANEL REHEARING OR HEARING EN BANC

---

Teresa Pike Tomlinson
HALL BOOTH SMITH, P.C.
1301 1st Ave., Suite 100
Columbus, GA 31901
706-494-3818
ttomlinson@hallboothsmith.com

*Counsel for Defendants-Appellants*

# CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Pursuant to 11th Cir. R. 26.1-1(a), the following is a complete list of the trial judge(s), all attorneys, persons, associations of persons, firms, partnerships, or corporations that may have an interest in the outcome of the particular case or appeal, including subsidiaries, conglomerates, affiliates and parent corporations, including any publicly held company that owns 10% or more of the party's stock, and any other identifiable legal entities related to a party:

1. Barrett, Jodi (District Court Counsel for Defendants-Appellants);

2. Bell, Brad (Acting General Counsel for Defendants-Appellants);

3. Bell Law Group (Acting General Counsel for Defendants-Appellants);

4. Berkshire Hathaway Inc., Ticker Symbol: BRK.A (Parent Company of Defendants-Appellants Insurer);

5. Craig Goldenfarb, P.A. (Counsel for Plaintiff-Appellee);

6. Dimitrouleas, William (District Court Judge);

7. Estate of Sara Schleider (Plaintiff-Appellee);

8. GVDB Holdings, Inc. (Parent Company of Defendants-Appellants GVDB Operations, LLC and JSMGV Management Company, LLC);

9. GVDB Operations, LLC d/b/a Grand Villa of Delray East (Defendant-Appellant);

10. Hall Booth Smith, P.C. (Counsel for Defendants-Appellants);

11. Harris, Andrew A. (Counsel for Plaintiff-Appellee);

12. Harris Appeals, P.A. (Counsel for Plaintiff-Appellee);

13. JSMGV Management Company, LLC (Defendant-Appellant);

14. Kuvin, Spencer T. (Counsel for Plaintiff-Appellee);

15. Matthewman, William (Magistrate Court Judge);

16. National Fire & Marine Insurance Company (Insurer for Defendants-Appellants);

17. Schleider, Howard (Plaintiff-Appellee);

18. Streicher, Grace Mackey (Counsel for Plaintiff-Appellee);

19. Tomlinson, Teresa Pike (Counsel for Defendants-Appellants); and

20. Vinarub, Felice (Plaintiff-Appellee).

# STATEMENT OF EXCEPTIONAL IMPORTANCE

Pursuant to 11th Cir. R. 35-5(c), I express a belief, based on a reasoned and studied professional judgment, that the panel decision is contrary to the following decisions of the Supreme Court of the United States or the precedents of this Circuit and that consideration by the full Court is necessary to secure and maintain uniformity of decisions in this court:

- *Aetna Health Inc. v. Davila*, 542 U.S. 200 (2004); and

- *Connecticut State Dental Ass'n v. Anthem Health Plans, Inc.*, 591 F.3d 1337 (11th Cir. 2009); and,

- *Borrero v. United Healthcare of New York, Inc.*, 610 F.3d 1296 (11th Cir. 2010).

I express a belief, based on a reasoned and studied professional judgment, that this appeal involves one or more questions of exceptional importance:

- Whether the panel's decision is contrary to the United State Supreme Court and Eleventh Circuit authority of *Aetna Health Inc. v. Davila*, 542 U.S. 200 (2004); *Connecticut State Dental Ass'n v. Anthem Health Plans, Inc.*, 591 F.3d 1337 (11th Cir.

2009), and *Borrero v. United Healthcare of New York, Inc.*, 610 F.3d 1296 (11th Cir. 2010), in holding that Plaintiffs' claims are not completely preempted by the Public Readiness and Emergency Preparedness Act, 42 U.S.C. § 247d-6d.

HALL BOOTH SMITH, P.C.

By: /s/ *Teresa Pike Tomlinson*
    Teresa Pike Tomlinson
    Georgia Bar No. 466930

**ATTORNEY OF RECORD
FOR DEFENDANTS-
APPELLANTS**

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS AND
CORPORATE DISCLOSURE STATEMENT ....................................... C-1

STATEMENT OF EXCEPTIONAL IMPORTANCE ............................... i

TABLE OF CONTENTS ............................................................... iii

TABLE OF AUTHORITIES ............................................................. v

I.    STATEMENT OF ISSUES ..................................................... 1

II.   STATEMENT OF PROCEEDINGS AND DISPOSITION .............. 2

    A.   Proceedings in the State and District Courts ........................ 2

    B.   Grand Villa's Appeal of Remand Order ............................. 3

STATEMENT OF FACTS ............................................................... 5

III.  ARGUMENT AND CITATION OF AUTHORITIES ...................... 7

    A.   The PREP Act ............................................................. 7

    B.   Review is Warranted Due to Misapplication of PREP Act
        Scope and the Complete Preemption Doctrine ................... 10

        1.   Schleider's Claims Fall within the Scope of the
            PREP Act ............................................................ 10

        2.   Schleider's Claims Meet the Davila Complete
            Preemption Scope Test ......................................... 12

            a.   Schleider's Claims Could Have Been, and
                Were in Fact, Brought under the PREP Act ...... 13

            b.   There is No Independent Legal Duty
                Implicated by Grand Villa's Countermeasure
                Administration and Use ..................................... 16

    C.   The Panel's Opinion Contravenes Prior Circuit
        Authority That Correctly Applies *Davila* ......................... 18

    D.   The Panel's Failure to Follow Precedent Undermines
        Congress's Exclusive, Specially Designated Federal
        Forum ...................................................................... 19

IV.  CONCLUSION .............................................................. 20

CERTIFICATE OF COMPLIANCE..........................................21

CERTIFICATE OF SERVICE..............................................22

COPY OF OPINION SOUGHT TO BE REHEARD ..............................23

# TABLE OF AUTHORITIES

## Cases

*Aetna Health Inc. v. Davila*, 542 U.S. 200 (2004).......................... passim

*Borrero v. United Healthcare of New York, Inc.*, 610 F.3d 1296
(11th Cir. 2010) .......................................................................... passim

*Boyle v. United Technologies Corp.*, 487 U.S. 500 (1988)........................7

*Caterpillar Inc. v. Williams*, 482 U.S. 386 (1987).....................................9

*Connecticut State Dental Ass'n v. Anthem Health Plans, Inc.*,
591 F.3d 1337 (11th Cir. 2009).......................................... i, 1, 4, 18, 19

*DiFelice v. Aetna U.S. Healthcare*, 346 F.3d 442 (3d Cir. 2003) ............20

*Grable & Sons Metal Prod., Inc. v. Darue Eng'g & Mfg.*, 545
U.S. 308 (2005).........................................................................................4

*Green v. Graham*, 906 F.3d 955 (11th Cir. 2018) ....................................7

*Maney v. Brown*, 91 F.4th 1296 (9th Cir. 2024) .......................................7

*Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41 (1987) .................................20

*Ross v. Jefferson County Dept. of Health*, 701 F.3d 655 (11th Cir.
2012)..........................................................................................................7

*Schleider v. GVDB Operations, LLC*, No. 21-11765, 2024 WL
4630723, Slip Op. (11th Cir. Oct. 31, 2024) .............................. passim

*Tafflin v. Levitt*, 493 U.S. 455 (1990)........................................................7

## Statutes

12 U.S.C. § 25b(b).........................................................................................9

28 U.S.C. § 1331 ...........................................................................................3

28 U.S.C. § 1406(a).......................................................................................3

28 U.S.C. § 1441 ...........................................................................................3

28 U.S.C. § 1447(d).......................................................................................3

28 U.S.C. § 1631 ...........................................................................................3

29 U.S.C. § 1144(b).......................................................................................9

29 U.S.C. § 143 ...................................................................................9

42 U.S.C. § 247d-6d(a)(1) ...................................................................7

42 U.S.C. § 247d-6d(a)(2)(B) ...............................................8, 10, 16

42 U.S.C. § 247d-6d(b)(8)(A)-(B) ......................................................8

42 U.S.C. § 247d-6d(c) .......................................................................11

42 U.S.C. § 247d-6d(d)(1) ...........................................................3, 8, 12

42 U.S.C. § 247d-6d(e)(1) .................................................................3, 8

42 U.S.C. § 247d-6d(e)(3) .................................................................11

42 U.S.C. § 247d-6d(i)(1)(A) ..............................................................9

42 U.S.C. § 247d-6d(i)(7)(A)(i) ..........................................................3

42 U.S.C. § 247d-6e ...........................................................................8

## Rules

11th Cir. R. 26.1-1(a) ..........................................................................1

11th Cir. R. 35-5(c) ..............................................................................i

Fed. R. App. P. 32(a) ..........................................................................21

Fed. R. App. P. 35 ...............................................................................1

Fed. R. App. P. 35(b)(2)(A) ...............................................................21

Fed. R. App. P. 40 ..........................................................................1, 11

Fed. R. App. P. 40(b)(1) .....................................................................21

Fed. R. Civ. P. 40(a)(2) ......................................................................15

## Regulations and Agency Proclamations

Declaration Under the Public Readiness and Emergency
    Preparedness Act for Medical Countermeasures Against
    COVID-19, 85 Fed. Reg. 15198-01 (Mar. 17, 2020)..........................6, 7

Fourth Amendment to the Declaration Under the Public
    Readiness and Emergency Preparedness Act for Medical
    Countermeasures Against COVID-19 and Republication of
    the Declaration, 85 Fed. Reg. 79190 (Dec. 9, 2020) .......................6, 7

HHS Advisory Opinion 20-04 on the PREP Act and the
Secretary's Declaration Under the Act (Oct. 22, 2020, mod.
Oct. 23, 2020) ........................................................................7

**COME NOW** Defendants-Appellants GVDB Operations, LLC and JSMGV Management Company, LLC (collectively "Grand Villa") and, pursuant to Fed. R. App. P. 35 and 40, file this Petition for Panel Rehearing or Rehearing En Banc of a panel decision which contravenes United State Supreme Court authority and Circuit authority and the requirements of the Public Readiness and Emergency Preparedness ("PREP") Act, 42 U.S.C. § 247d-6d regarding removal jurisdiction and the Complete Preemption Doctrine. A pertinent dissent was issued.

## I.    STATEMENT OF ISSUES

- Whether the panel's decision is contrary to the United States Supreme Court and Circuit authority of *Aetna Health Inc. v. Davila*, 542 U.S. 200 (2004), *Connecticut State Dental Ass'n v. Anthem Health Plans, Inc.*, 591 F.3d 1337 (11th Cir. 2009), and *Borrero v. United Healthcare of New York, Inc.*, 610 F.3d 1296 (11th Cir. 2010), in holding that Plaintiffs' claims are not completely preempted by the PREP Act.

## II.   STATEMENT OF PROCEEDINGS AND DISPOSITION

### A.   Proceedings in the State and District Courts

On March 12, 2021, Plaintiff-Appellee the Estate of Sara Schleider ("Schleider") filed a Complaint against Grand Villa and its management company alleging four counts of negligence and willful misconduct under the Florida Assisted Living Facilities Act, Chapter 429, Resident Bill of Rights, Fla. St. 429.28 for the wrongful death of Ms. Schleider. [A030]. In the "ALLEGATIONS APPLICABLE TO ALL COUNTS" Schleider asserts:

> Alternatively, Defendant[s'] actions were willful misconduct in the form of gross reckless behavior (as outlined below). Defendants actions were in disregard of a known and obvious risk that was so great that it made it highly probable that harm would outweigh any benefit.

*Id.*, ¶ 16; *see also* ¶¶ 17-69 (purportedly "outlin[ing]" willful misconduct).

Each of the four counts similarly asserts:

> Alternatively, [Defendant's] conduct rose to the level of willful misconduct or gross negligence. Its conduct was in disregard of a known or obvious risk that was so great as to make it highly probable that the harm it caused, outweighed any actions it took.

*Id.* at ¶¶ 76, 89, 101, 114. The Complaint attaches and incorporates a Florida Agency for Health Care Administration (AHCA) Administrative Complaint, which purports to detail Grand Villa's wrongful

administration and use of COVID-19 covered countermeasures, such as COVID-19 diagnostic tests ([A070, ¶¶ 22-25]), personal protective equipment ("PPE") (*id.*, ¶¶ 32(f),(h)-(j), (l)-(n), (r), 36(b), 37(b), 40-41, 50, 58), and sanitizers (*id.*, ¶ 38).[1]

Defendants removed the action to federal court asserting federal question jurisdiction, the PREP Act's exclusive federal jurisdiction and cause of action (28 U.S.C. § 1331; 42 U.S.C. §§ 247d-6d(d)(1), (e)(1)), and federal officer removal jurisdiction (28 U.S.C. § 1441). [A010]. Grand Villa also sought immediate transfer to the congressionally designated United States District Court for this District of Columbia ("D.D.C.") under 28 U.S.C. §§ 1406(a) and 1631. [A013]. Schleider sought remand, and Grand Villa opposed it. [A008, A014, A018]. The District Court remanded the matter to state court. [A025].

## B.    Grand Villa's Appeal of Remand Order

Grand Villa appealed pursuant to 28 U.S.C. § 1447(d), urging that the District Court be reversed and that removal and transfer proceed

---

[1] Covered countermeasures are approved qualified pandemic products used to diagnose, mitigate, prevent or treat a pandemic or limit the harm a pandemic might otherwise cause. § 247d-6d(i)(7)(A)(i). COVID-19 tests, PPE and sanitizers are approved COVID-19 countermeasures.

under the PREP Act, the *Grable* Doctrine and federal officer removal —
all issues of first impression within the Circuit. [Doc.1]. Briefing closed
on November 9, 2021. [Doc. 31]. Oral argument was held on April 8, 2022.
[Doc. 48].

On October 31, 2024, a divided panel issued an opinion affirming
remand and rejecting Grand Villa's arguments of federal officer removal,
complete preemption and embedded federal question under the *Grable*
Doctrine. *Schleider v. GVDB Operations, LLC*, No. 21-11765, 2024 WL
4630723, Slip Op. (11th Cir. Oct. 31, 2024) ('Slip Op.") [Doc. 82-1]. Circuit
Judge R. Luck issued a dissenting opinion, stating the District Court's
remand should have been reversed and removal allowed under the PREP
Act and the Complete Preemption Doctrine. The dissent states the panel
opinion contradicts the Supreme Court's *Davila* opinion by misapplying
the second prong of its complete preemption test and by otherwise
contravening *Davila's* directives. The dissent also notes the panel opinion
contravenes this Circuit's precedent of *Connecticut State Dental* and
*Borrero*, which correctly applied the rule of *Davila* and its complete
preemption analysis under similar circumstances of claims with mixed
standards of liability — here, negligence and willful misconduct.

Grand Villa petitions for panel or en banc rehearing as to whether the PREP Act provides original federal question jurisdiction and whether the panel's opinion contravenes Supreme Court and Circuit authority. Review is necessary to determine how this Circuit will apply the Doctrine of Complete Preemption in the face of the diverging *Schleider* opinion and to address issues of fact and law overlooked or misapprehended by the panel. Rehearing will impact numerous COVID-19 pandemic cases within the Circuit. It also will ensure the PREP Act's proper application and engender reliance thereon by private sector health care providers like Grand Villa when next called upon to participate in a "whole-of-nation" response to a national security public health emergency.

## STATEMENT OF FACTS

Grand Villa is a Florida licensed assisted living facility. *Id.*, ¶ 11; *see also* [A070]. Sara Schleider was a resident of Grand Villa when the COVID-19 pandemic hit the United States. [A030, ¶¶ 4, 11, 24-25]. She contracted COVID-19 on or about May 9, 2020. [A030, ¶¶ 75, 77].

On May 15, 2020, AHCA conducted a survey of Grand Villa's administration and use of COVID-19 countermeasures. *Id.,* ¶ 33. AHCA found Grand Villa was utilizing COVID-19 countermeasure tests (*see id.,*

¶¶ 33-38) and countermeasure PPE (*id.,* ¶¶ 39, 45(f), (h)-(r), 47-48). Ms. Schleider died on June 29, 2020 allegedly as a result of COVID-19. *Id.*, ¶ 113.

Due to the COVID-19 pandemic, the PREP Act was invoked by the Secretary of the United States Department of Health and Human Services ("HHS") declaring a public health emergency. Declaration Under the Public Readiness and Emergency Preparedness Act for Medical Countermeasures Against COVID-19, 85 Fed. Reg. 151980 (Mar. 17, 2020) ("Declaration"). The Secretary declared that "[t]he world is facing an unprecedented pandemic" and that a "unified, whole-of-nation response to the COVID-19 pandemic among federal, state, local, and private-sector entities" was warranted to fight the pandemic and save lives. *See* Fourth Amendment to the Declaration Under the Public Readiness and Emergency Preparedness Act for Medical Countermeasures Against COVID-19 and Republication of the Declaration, 85 Fed. Reg. 79190, 79191 (Col. C), 79194 (Sec. IX), and 79197 (Sec. XI) (Dec. 9, 2020). The Secretary specifically stated that "healthcare professionals and healthcare companies," such as Grand Villa, were part of the government's response to the COVID-19 pandemic.

*See* HHS Advisory Opinion 20-04 on the PREP Act and the Secretary's Declaration Under the Act ("Advisory Opinion 20-04") (Oct. 22, 2020, mod. Oct. 23, 2020).[2]

## III.  ARGUMENT AND CITATION OF AUTHORITIES

### A.  <u>The PREP Act</u>

The PREP Act is a comprehensive statutory scheme providing covered persons such as Grand Villa with "suit and liability immunity" from all claims for loss caused by, arising from, relating to or resulting from the administration or use of covered countermeasures. 42 U.S.C. §§ 247d-6d(a)(1).[3] Via the PREP Act, Congress creates a specially

---

[2] Advisory Opinions are incorporated into the Declaration. Fourth Amended Declaration, 85 Fed. Reg. at 79191, Col. B. *See Maney v. Brown*, 91 F.4th 1296, 1299 n.1 (9th Cir. 2024).

[3] Statutory "suit" immunity is an extraordinary grant of sovereign immunity to a private party. *Boyle v. United Techs. Corp.*, 487 U.S. 500, 515 (1988) (J. Brennan, dissent) (elevating statutory suit immunity over judicially constructed immunity). It is a threshold jurisdictional matter and is an indicum of federal jurisdictional predominance that divests state courts of concurrent jurisdiction. *Tafflin v. Levitt*, 493 U.S. 455, 459–60 (1990); *Green v. Graham*, 906 F.3d 955, 961, 965 (11th Cir. 2018) ("immunity from suit" is jurisdictional "forum immunity" and is distinguished from defensive liability immunity); *Ross v. Jefferson Cnty. Dep't of Health*, 701 F.3d 655, 659 (11th Cir. 2012) (suit immunity "is in the nature of a jurisdictional bar"); *contra* Slip Op., at 17 (erroneously conflating suit immunity and defensive immunity).

designated federal court in the D.D.C. with exclusive jurisdiction over countermeasure claims and establishes an administrative claims process so as to streamline pandemic litigation and prevent burdening the dockets of non-designated courts with countermeasure cases. §§ 247d-6d(e)(1), (e)(5); 247d-6e. Congress casts a wide scope for countermeasure claims providing, "any claim for loss" that has a "relationship" with the administration or use of a covered countermeasure "including a causal relationship with the… administration… or use of such countermeasure", falls under the Act's purview. *Id.* at (a)(2)(B) ("relationship" does not have to be causal).

"[T]he sole exception" to immunity from all claims for loss is "an exclusive Federal cause of action against a covered person for death or serious physical injury proximately caused by willful misconduct…." 42 U.S.C. § 247d-6d(d)(1). The Act compounds its force with an express defensive preemption subsection which broadly negates the enforcement of any state law claim that "relates to" the administration or use of countermeasures and "conflicts with" or "differs from" the PREP Act. *Id.*, (b)(8)(A)-(B). The PREP Act provides no savings or carve-out clause limiting its preemptive bar. *Compare id.*, *with* Labor-Management

Relations Act ("LMRA"), 29 U.S.C. § 143, Employment Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1144(b), and National Bank Act, 12 U.S.C. § 25b(b).

Schleider asserts a death claim based on Grand Villa's alleged inadequate utilization of COVID-19 countermeasures. COVID-19 diagnostic tests, PPE and sanitizer products meant to prevent or mitigate the spread of the pandemic virus are the subject of the Complaint and are among the invoked "covered countermeasures" which trigger the Act. §§ 247d-6d(i)(1)(A), (i)(7)(A)(i); *see also* [A030, ¶¶ 33-37, 45, 47, 49-50, 58, 65-66]. It is conceded that Grand Villa is a "covered person." Slip. Op. (dissent) at 36 n. 2. Thus, the Complaint's "factual allegations raise precisely the type of [PREP Act] determinations that trigger complete preemption and convert the otherwise state law claims into federal claims." *Borrero*, 610 F.3d at 1303. While the plaintiff is the "master of the complaint," "when the plaintiff chooses to plead a cause of action completely preempted by federal law, the plaintiff is not always master of the forum." *Id.*, *citing Caterpillar Inc. v. Williams*, 482 U.S. 386, 399 (1987). Here, Schleider selected a state forum that was jurisdictionally barred and asserted claims to which complete preemption applied. *Id.*

**B.**   **Review is Warranted Due to Misapplication of PREP Act Scope and the Complete Preemption Doctrine**

The panel's complete preemption analysis and holding contravene the PREP Act and the Supreme Court authority of *Davila* because the Panel incorrectly determines that the jurisdictional scope of the Act is set by the standard of liability of its cause of action. *Davila*, 542 U.S. at 211-13.

**1.**   ***Schleider's Claims Fall within the Scope of the PREP Act***

The PREP Act's "Scope" is broader than the standard of liability of its cause of action. 42 U.S.C. § 247d-6d(a)(2)(B). Its scope "applies to any claim for loss" that has a relationship with the administration or use of a covered countermeasure, *including* a causal relationship with said administration or use of such countermeasure. *Id.* A "causal relationship" is just one type of countermeasure "relationship" which falls under the PREP Act, and it is extraordinarily broad in allowing *four* types of direct and indirect causation: 1) caused by; 2) arising out of; 3) relating to; or 4) resulting from the utilization of covered countermeasures. *Compare id.*, *with id.* at (a)(1). The panel, however, mistakes that the scope is limited to a "causal relationship" and that an allegation purporting to disavow the utilization of countermeasures negates any causal relationship, thus

putting the Complaint outside the scope of the PREP Act for purposes of complete preemption, to-wit: "Plaintiffs expressly allege in their complaint that Defendants did not take or implement any covered countermeasures under the PREP Act." Slip Op. at 19-20. Although the panel recognizes this disavowal is only "in part," it determines that sentence trumps Schleider's multiple affirmative assertions of countermeasure administration and use. *Id.* at 19-20. But a claimant's disavowal of a claim will not circumvent the application of complete preemption where the statute's scope is otherwise triggered. *Borrero*, 610 F.3d at 1303. Regardless, the Complaint is undeniably replete with affirmative acts of countermeasure utilization. Slip Op. (dissent) at 38-40; *see also* [A030, ¶¶ 32-37, 45, 75, 88, 100, 113].[4]

Plaintiffs' allegations fall squarely within the PREP Act's scope thereby warranting the application of complete preemption, as well as the Act's exclusive cause of action and exclusive special court.

_____

[4] In addition to the broader concern of precedent uniformity, the panel's holding overlooks or misapprehends the record of alleged affirmative countermeasure utilization (*see* [A030]; [A070]) and the Act's express application to either "act[s] or omission[s]." §§ 247d-6d(c), (e)(3); *see also* Slip Op. at 9, 17 (quoting but not applying "act or omission" language). Thus, panel reconsideration, at least, is warranted under Fed. R. App. P. 40.

### 2. Schleider's Claims Meet the Davila Complete Preemption Scope Test

There is no dispute that the PREP Act creates an exclusive cause of action "for death or serious physical injury proximately caused by willful misconduct ... by [a] covered person." Slip Op. (dissent) at 31; *see also* § 247d-6d(d)(1). Thus, the first prong of the *Davila* complete preemption test is met. *Id.* However, the panel misapplies, and thereby contravenes, *Davila's* second prong to determine the preemptive scope of an exclusive cause of action. That test has two parts: 1) whether the claimant could have brought his claim under the PREP Act; and 2) whether there is any independent legal duty that is implicated by Grand Villa's actions. *Davila,* 542 U.S. at 210.

Fundamentally, it is not proper to compare the elements of an exclusive federal claim and an asserted state claim when determining statutory scope for complete preemption purposes, but that is what the panel's opinion does. Slip Op. at 17-18, 22-27; *but see Davila*, 542 U.S. at 210-11, 215-16. It is the jurisdictional scope of the statute that determines its preemptive force for removal purposes. *Davila*, 542 U.S. at 210-11. The panel opinion impermissibly conflates the concepts of jurisdictional scope and standard of liability. As a result, the panel

12

incorrectly determines that: 1) Schleider could not have brought a PREP Act claim because the negligence allegations asserted are not viable under the Act's willful misconduct standard of liability; and 2) Schleider's state claims arise from an "independent legal duty" simply because they seek to enforce a lower duty of ordinary care breached by mere negligence (not willful misconduct) in administering countermeasures. The panel's error in requiring parallel or matching standards of liability taints the application of both parts of the preemptive scope test. Slip Op. at 17-26.

### a. Schleider's Claims Could Have Been, and Were in Fact, Brought under the PREP Act

The majority focuses on the Act's willful misconduct standard and compares it to the much lower negligence standard under the Florida Assisted Living Facilities Act. *Id.* at 22-23. While acknowledging the Complaint alleges willful misconduct, the panel determines that Schleider's claims are primarily negligence claims. *Id.*[5] Given its

---

[5] The Complaint alleges "acts and omissions" which rise to the level of willful misconduct thereby "parrot[ting] the elements of a PREP Act cause of action." Slip. Op. (dissent) at 36-37; *see also* [A030 ¶¶ 16, 75, 89, 101, 114] (willful misconduct allegations). Nevertheless, the majority parses: "Plaintiffs did not assert an explicit claim for willful misconduct under, and as defined by, the PREP Act." Slip Op. at 22; *see also id.* at 21 n. 6, 28 n.8 (allegations are "alternative" or for "punitive damages" purposes).

erroneous finding that the Act's standard of liability (*i.e.,* willful misconduct) is determinative of the statute's preemptive scope, the panel suggests that a non-willful misconduct claim would be outside the jurisdictional scope of the exclusive cause of action because it would not be viable under the PREP Act: "Plaintiffs' state-law causes of action for negligence under Florida Statute § 429.28 cannot be brought under the PREP Act's cause of action for willful misconduct." Slip Op. at 27. But the potential non-viability of a claim under the statute's cause of action has no place in a complete preemption analysis. *Davila*, 542 U.S. at 215-16; Slip. Op. (dissent) at 31, *citing Davila*, 542 U.S. at 207-08. *Davila* "doesn't require that the state-law claims precisely duplicate the PREP Act's cause of action" in order to find complete preemption. *Id.* at 32. "So long as at least some portions of the claims alleged willful misconduct within the PREP Act's scope, that's enough" to warrant complete preemption and removal. *Id.*; *see also id.* at 35. "Parallel" elements are not required to warrant removal under complete preemption. *Compare* Slip Op. at 17-18 (citing inapposite law), *with Davila*, 542 U.S. at 215-16 (prohibiting a parallel requirement). The majority does not address *Davila's* contrary holding (directly on point): "Nor would it be consistent with our precedent

to conclude that only strictly duplicative state causes of action are pre-empted." *Davila,* 542 U.S. at 216. So, then, Schleider could have brought a PREP Act claim (and did indeed bring such a claim) for wrongful death against a covered person relating to Grand Villa's administration or use of countermeasures.[6] Therefore, Schleider meets this criterion of *Davila's* second prong.

Further, Congress provides that only the D.D.C. — not the instant Court or the District Court — can determine the sufficiency of allegations to meet claim elements: "Such [specially assigned three-judge] panel shall have jurisdiction over such action for purposes of considering motions to dismiss, motions for summary judgment, and matters related thereto." 42 U.S.C. § 247d-6d(e)(5). In other words, the Act prohibits any non-D.D.C. court from determining whether Schleider's allegations meet its requisite standard of liability. *Compare id., with* Slip Op. at 26 n.6; *see also supra* note 2 (requiring D.D.C. to assess allegation sufficiency further demonstrates Congress' intent of exclusive federal forum

---

[6] Schleider **did bring** this claim under the PREP Act by filing, and then voluntarily dismissing, an administrative claim under the Act's 42 U.S.C. § 247d-6e Countermeasures Injury Compensation Program ("CICP"). [Doc. 13, 30]. The panel's oversight of this fact warrants reconsideration. Fed. R. Civ. P. 40(a)(2).

jurisdiction). Any district court to which a PREP Act claim has been removed need only assess whether the claim falls into the "Scope" of subsection (a)(2)(B) and then transfer the matter to the D.D.C. to assess for purposes of allegation sufficiency.

### b. There is No Independent Legal Duty Implicated by Grand Villa's Countermeasure Administration and Use

The panel's focus on matching elements causes it to misapply *Davila's* scope test regarding whether a legal duty independent of those related to countermeasures exists. The panel holds that Schleider has not brought the suit "***only*** to rectify willful misconduct" but also to "remedy [a] violation" of the Florida Assisted Living Facilities Act, an act the majority determines is "a legal duty independent of the PREP Act's willful misconduct, *i.e.* Defendants' duty to exercise non-negligent care" under state law. Slip Op. at 23, 25-26. Yet, because Schleider alleges Grand Villa breached its duty of "non-negligent care" via its administration and use of covered countermeasures, *Davila* requires that those allegations indeed fall within the scope of the PREP Act and its exclusive cause of action. *Davila*, 542 U.S at 211-13 (finding that alleged

negligence regarding denial of plan benefits was within ERISA's contract action's preemptive scope).

Contrary to the panel decision, *Davila's* holding finds complete preemption applies in "mixed" element claims, *i.e.*, negligence and willful misconduct allegations. *Compare* Slip Op. at 23-25, *with Davila*, 542 U.S. at 206, 218-19 (applying complete preemption where claim involved "mixed" issues of benefit plan eligibility (which are within ERISA's scope of legal duty) and medical treatment decisions (which are not)). Claim elements have no bearing on the determination of the legal duty sought to be enforced or the jurisdictional preemptive scope of the federal cause of action. Indeed, the legal duty dichotomy in *Davila* — an alleged tort duty versus a federally codified contractual duty — is starker than that here where the panel debates different levels of tort duties. Under *Davila,* neither the nature of the claim (contract or tort), the remedy sought (equitable or legal) nor the duplication of elements (negligence, gross negligence or willful misconduct) determines the scope of the statute or avoids the application of the complete preemption doctrine. *Davila*, 542 U.S. at 215-16. The panel decision therefore contravenes *Davila*.

## C.    The Panel's Opinion Contravenes Prior Circuit Authority That Correctly Applies *Davila*

The Circuit Authority of *Connecticut State Dental* and *Borrero* follows the *Davila* rationale and provides that claims, such as Schleider's (which fall "in part" within the scope of an exclusive federal cause of action) are completely preempted. *Connecticut State Dental*, 591 F.3d at 1350-53; *Borrero*, 610 F.3d at 1303-05; *see also* Slip Op. (dissent) at 32-38. The dissent points out that the panel's misapplication of *Davila* and the complete preemption doctrine contravenes these prior panel decisions. *Id.*

Applying *Davila, Connecticut State Dental* allows for the removal of "hybrid claim[s]" that only partly fall within the scope of a jurisdictionally preemptive Act. *Connecticut State Dental*, 591 F.3d at 1351; *see also* Slip Op. (dissent) at 33. Also following *Davila, Borrero* applies complete preemption even where "*[m]any … allegations*" fall outside the scope of ERISA and the federal statute was only "implicated." Slip Op. (dissent) at 33-34, 37, *quoting Borrero,* 610 F.3d at 1304-05. The dissent correctly explains: "It's only when a state-law claim is "'*entirely independent*'" that it falls outside the scope of an exclusive cause of action. *Id.* 34-35; *see also id.* at 37-38 (same). Looking at Schleider's state

law claims, the dissent concludes: "'at least some portions' of the plaintiffs' claims are within the scope of the PREP Act's exclusive cause of action for death caused by covered persons' willful misconduct." Slip. Op. at 32, *citing Connecticut State Dental*, 591 F.3d at 1342. The dissent correctly explains that while the "crux of the allegations" may have been outside the cause of action allowed by the federal statute, here parts of the claims "stray … into [PREP Act] territory." *Id.* at 37. The dissent therefore correctly reasons that, under this Circuit's prior precedent applying *Davila*, complete preemption is proper here. Slip Op. at 35, 38. Further review is needed to ensure uniformity of Circuit authority.

### D. The Panel's Failure to Follow Precedent Undermines Congress's Exclusive, Specially Designated Federal Forum

The panel decision, if left standing, "completely undermines" the PREP Act by allowing "supplemental" state court actions when Congress clearly intended there would be none. *Davila*, 542 U.S. at 216. Congress has rejected and barred the more permissive negligence standard of liability upon which the panel bases its jurisdictional analysis. The panel decision allows impermissible cases to proliferate in impermissible forums. *Id.* at 216-17; *cf. Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 55

(1987) (applying LMRA § 301 preemption "even when the state action purport[s] to authorize a remedy unavailable under the federal provision"); *DiFelice v. Aetna U.S. Healthcare*, 346 F.3d 442, 456-57 (3d Cir. 2003) (applying *Pilot Life* in context of complete preemption). This Court should not circumvent what Congress has expressly retained for a special federal court.

## IV.   CONCLUSION

WHEREFORE, given the foregoing, panel rehearing or en banc review should be granted.

Respectfully submitted this 19th day of November, 2024.

HALL BOOTH SMITH, P.C.

By: /s/ *Teresa Pike Tomlinson*
        Teresa Pike Tomlinson
        Georgia Bar No. 466930
        **Attorneys for Defendants-**
        **Appellants**

1301 1st Ave., Suite 100
Columbus, GA 31901
(706) 494-3818
ttomlinson@hallboothsmith.com

## CERTIFICATE OF COMPLIANCE

In compliance with Federal Rules of Appellate Procedure, the undersigned counsel hereby certifies the following:

1. This brief complies with the type-volume limitation of Fed. R. App. P. 35(b)(2)(A) and 40(b)(1) because it contains no more than 3,900 words, excluding the parts of the brief exempted by the Rules.

2. This brief complies with the typeface and style requirements of Fed. R. App. P. 32(a) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word for Office 365 with size 14, Times New Roman type style.

Respectfully submitted this 19th day of November, 2024.

HALL BOOTH SMITH, P.C.

By: /s/ *Teresa Pike Tomlinson*
　　Teresa Pike Tomlinson
　　Georgia Bar No. 466930
　　***Attorneys for Defendants-Appellants***

1301 1st Ave., Suite 100
Columbus, GA 31901
(706) 494-3818
ttomlinson@hallboothsmith.com

## CERTIFICATE OF SERVICE

I hereby certify that on the 19th day of November, 2024, I caused a copy of the foregoing ***Petition for Rehearing or Rehearing En Banc of Defendants-Appellants*** to be served upon the following attorneys of record by filing said document with the CM/ECF system, which will automatically send electronic notification to the following:

Spencer T. Kuvin, Esq,
LAW OFFICES OF CRAIG
GOLDENFARB, P.A.
1800 S. Australian Avenue #400
West Palm Beach, FL 33409
561-220-9141
skuvin@800goldJaw.com

Andrew A. Harris
Grace Mackey Streicher
HARRIS APPEALS, P.A.
5220 Hood Road #201
Palm Beach Gardens, FL 33418
561-867-9500
Andrew@harrisappeals.com
Grace@harrisappeals.com
***Attorneys for Plaintiff-Appellee***

Respectfully submitted this 19th day of November, 2024.

HALL BOOTH SMITH, P.C.

By: */s/ Teresa Pike Tomlinson*
Teresa Pike Tomlinson
Georgia Bar No. 466930
***Attorneys for Defendants-Appellants***

1301 1st Ave., Suite 100
Columbus, GA 31901
(706) 494-3818
ttomlinson@hallboothsmith.com

[PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 21-11765

_____

HOWARD SCHLEIDER,
FELICE VINARUB,
as Co-Personal Representatives for
The Estate of Sara Schleider, Deceased,

Plaintiffs-Appellees,

*versus*

GVDB OPERATIONS, LLC,
d.b.a. Grand Villa of Delray East,
JSMGV MANAGEMENT COMPANY, LLC,
a Florida Limited Liability Company,

Defendants-Appellants.

————————————————

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 9:21-cv-80664-WPD

————————————————

Before JORDAN, LUCK, and LAGOA, Circuit Judges.

LAGOA, Circuit Judge:

GVDB Operations, LLC, and JSMGV Management Company, LLC (collectively, "Defendants"), appeal the district court's order remanding this case to state court. Howard Schleider and Felice Vinarub, as co-personal representatives for the Estate of Sara Schleider (collectively, "Plaintiffs"), initiated this case in Florida state court. In their complaint, Plaintiffs asserted state-law claims. They alleged that Defendants failed to prevent the spread of COVID-19 at their assisted living facility and, as a result, Sara Schleider contracted COVID-19 and died soon after.

Defendants removed the state court action to federal court and asserted that the district court had federal subject matter jurisdiction because: (1) Defendants were acting under a federal officer; (2) Plaintiffs' claims were completely preempted by the Public Readiness and Emergency Preparedness Act (the "PREP Act"), 42 U.S.C. §§ 247d-6d, 247d-6e; and (3) Plaintiffs' claims raised an embedded federal question concerning the PREP Act. The district court, however, concluded that it lacked subject matter jurisdiction

and remanded the case to state court.  After careful review, and
with the benefit of oral argument, we affirm.

## I.     BACKGROUND

In October 2019, Sara Schleider was admitted as a patient at
an assisted living facility owned and operated by Defendants.
Around May 9, 2020, she contracted COVID-19 at Defendants' fa-
cility and died soon after.

Plaintiffs, as representatives for Sara Schleider's estate, as-
serted survival and wrongful death claims against Defendants for
violating Florida Statute § 429.28—the "Resident bill of rights"
within Florida's Assisted Living Facilities Act—in Florida state
court.  In support of their claims, Plaintiffs alleged that Defendants
owed a duty to Sara Schleider "to properly hire, retain and super-
vise employees to ensure" that their employees "exercised non-
negligent care."   Plaintiffs also alleged Defendants breached that
duty by generally failing to implement measures to prevent the
transmission of COVID-19 to Sara Schleider.  Plaintiffs alleged that
Defendants "complete[ly] fail[ed] to provide[] any appropriate
countermeasures to prevent the rampant spread of COVID-19 at
Defendants' facility."  And Plaintiffs alleged that Defendants' negli-
gence was the proximate cause of Sara Schleider's—and her es-
tate's—injuries and damages.  In the alternative, and in support of
their Florida Statute § 429.28 claims, Plaintiffs also alleged that De-
fendants' "conduct rose to the level of willful misconduct or gross
negligence" because their "conduct was in disregard of a known or

obvious risk that was so great as to make it highly probable that the harm it caused[] outweighed any actions [they] took."

Defendants subsequently removed Plaintiffs' state court action to federal district court under 28 U.S.C. §§ 1441(a) and 1442(a)(1).  According to Defendants, the district court had subject matter jurisdiction over the case for three reasons: (1) Defendants were acting under a federal officer; (2) Plaintiffs' claims were completely preempted by the PREP Act; and (3) Plaintiffs' claims raised an embedded federal question.[1]  In response, Plaintiffs moved to remand the case to state court, asserting that their complaint asserted no causes of action arising under federal law and that Defendants were not federal officers.

The district court granted Plaintiffs' motion and remanded the case.  In so doing, the district court held that Defendants improperly removed this case under 28 U.S.C. § 1441(a) because Plaintiffs' complaint alleged only state-law claims and that Defendants could not remove the case to federal court based on potential defenses to Plaintiffs' claims.  The district court further held that the PREP Act did not completely preempt Plaintiffs' claims and that Plaintiffs' "state-law claims of negligence and wrongful death based on a nursing home's inaction in failing to protect against the spread of COVID-19 . . . are not within the scope of the PREP Act."

---

[1] After removing this case to federal court, Defendants also moved to dismiss Plaintiffs' claims and, in the alternative, to transfer Plaintiffs' claims to the U.S. District Court for the District of Columbia.  Upon remanding the case to state court, the district court denied these motions as moot.

But the district court did not address whether removal was proper under § 1442(a)(1)—i.e., whether Defendants had acted under a federal officer.  This appeal followed.

## II.    STANDARD OF REVIEW

"We review *de novo* the district court's decision to remand a case to state court for lack of subject matter jurisdiction." *Lowery v. Ala. Power Co.*, 483 F.3d 1184, 1193 (11th Cir. 2007); *accord Lloyd v. Benton*, 686 F.3d 1225, 1227 (11th Cir. 2012).

## III.    FEDERAL QUESTION JURISDICTION

Under 28 U.S.C. § 1441(a), a defendant may remove "any civil action brought in a State court of which the district courts of the United States have original jurisdiction."  When, as here, complete diversity citizenship does not exist, the defendant must show that federal question jurisdiction is present.  *Id.* § 1441(b); *see also Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987) ("Absent diversity of citizenship, federal-question jurisdiction is required.").  "A removing defendant bears the burden of proving proper federal jurisdiction." *Adventure Outdoors, Inc. v. Bloomberg*, 552 F.3d 1290, 1294 (11th Cir. 2008).  Federal courts have federal jurisdiction over "all civil actions arising under the Constitution, laws, or treatises of the United States." 28 U.S.C. § 1331.

"The presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar*, 482 U.S. at 392.  The well-pleaded complaint rule means that a

federal question is "presented" when the complaint—on its face—invokes federal law as the basis for relief.  The plaintiff is thus "the master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law."  *Id.*  However, even if a plaintiff has pled only state-law claims, a plaintiff may not avoid federal jurisdiction if either: (1) the state-law claims raise substantial questions of federal law or (2) federal law completely preempts the state-law claims.  *See Franchise Tax Bd. v. Constr. Laborers Vacation Tr.*, 463 U.S. 1, 13 (1983); *Dunlap v. G & L Holding Grp., Inc.*, 381 F.3d 1285, 1289 (11th Cir. 2004).

## IV.   ANALYSIS

On appeal, Defendants assert that the district court erred in remanding this case to state court.  Specifically, Defendants assert that the district court had subject matter jurisdiction, and therefore they had properly removed this case to federal court, because: (1) Defendants acted under a federal officer; (2) Plaintiffs' claims are completely preempted by the PREP Act; and (3) Plaintiffs' claims raise an embedded federal question concerning the PREP Act.  Defendants' first argument in favor of removal relies on 28 U.S.C. § 1442(a)(1), which allows "any officer (or any person acting under that officer) of the United States or of any agency thereof" to remove a case to federal court if certain requirements are met.  Defendants' second and third arguments in favor of removal rely on federal question jurisdiction under § 1441(a).

An order remanding a case to state court for lack of subject matter jurisdiction ordinarily is not reviewable on appeal.  28

U.S.C. § 1447(d); *see Vachon v. Travelers Home & Marine Ins. Co.*, 20 F.4th 1343, 1346–47 (11th Cir. 2021).  But if one of the asserted grounds for removal is § 1442 or § 1443, "and the district court order[s] the case remanded to state court, the whole of its order [becomes] reviewable on appeal." *BP P.L.C. v. Mayor & City Council of Baltimore*, 593 U.S. 230, 238 (2021).  Defendants removed this case under both § 1441 and § 1442.  While the district court did not address § 1442 in its remand order, we have previously determined that a district court's failure to address a ground for removal constitutes an implicit denial of that ground.  *See, e.g., Alabama v. Conley,* 245 F.3d 1292, 1293 n.1 (11th Cir. 2001).  Under *BP P.L.C.*, we must therefore consider all the grounds Defendants raised in support of removal.[2]

We consider Defendants' three arguments in support of federal subject matter jurisdiction—i.e., (1) federal officer removal; (2) complete preemption; and (3) embedded federal question jurisdiction—in turn.  Before addressing these arguments, however, we provide a brief overview of the PREP Act and the pertinent COVID-19 declaration made by the Secretary of the United States Department of Health and Human Services (the "Secretary").

---

[2]  However, as noted by the majority in *BP P.L.C.,* district courts should  be mindful of their ability to deter defendants from raising spurious theories to seek removal.  *See* 593 U.S. at 245–46; *see also* 28 U.S.C. § 1447(c) (explaining that district courts "may order a defendant to pay the plaintiff's costs and expenses (including attorney's fees) if it frivolously removes a case from state court.").

## A.  The PREP Act and COVID-19

### 1.  *The PREP Act*

The PREP Act, which was enacted in 2005, authorizes the Secretary to make "a determination that a disease or other health condition or other threat to health constitutes a public emergency, or . . . future . . . emergency." 42 U.S.C. § 247d-6d(b)(1).  If such a determination is made, the Secretary "may make a declaration . . . recommending, under conditions as the Secretary may specify, the manufacture, testing, development, administration, or use of one or more covered countermeasures."[3] § 247d-6(b)(1).  The PREP Act "lies dormant" until the Secretary publishes a declaration recommending that certain covered countermeasures be taken in response to a public-health emergency.  *Maglioli v. All. HC Holdings LLC*, 16 F.4th 393, 400 (3d Cir. 2021) (citing 42 U.S.C. § 247d-6d(b)(1)).  Once the Secretary publishes a declaration, the PREP Act provides that "a covered person shall be immune from suit and liability under Federal and State law with respect to all claims for loss caused by, arising out of, relating to, or resulting from the administration to or the use by an individual of a covered countermeasure." 42 U.S.C. § 247d-6d(a)(1).  And "[u]pon the issuance by the Secretary of a declaration," the United States Department of the

---

[3] The terms "covered countermeasure" and "covered person" are defined in the PREP Act.  42 U.S.C. § 247d-6d(i)(1)–(2).  As relevant to this appeal, covered countermeasures include "qualified pandemic or epidemic product[s]" used to mitigate, prevent, or limit a pandemic, and covered persons include "program planner[s]" that supervise, administer, or "provide[] a facility to administer or use a covered countermeasure." *Id.* § 247d-6d(i)(2), (6).

Treasury establishes "an emergency fund designated as the 'Covered Countermeasure Process Fund' for purposes of providing . . . compensation to eligible individuals for covered injuries directly caused by the administration or use of a covered countermeasure." *Id.* § 247d-6e(a).

"For most who suffer an injury that falls under the [PREP Act's] immunity provision, the sole remedy is compensation from the 'Covered Countermeasures Process Fund,' as determined by an administrative process." *Mitchell v. Advanced HCS, L.L.C.*, 28 F.4th 580, 586 (5th Cir. 2022). But the PREP Act does not immunize covered persons from injuries "proximately caused by willful misconduct." 42 U.S.C. § 247d-6d(d)(1). Instead, the PREP Act provides a distinct cause of action for "willful misconduct," which is defined as "an act or omission that is taken—(i) intentionally to achieve a wrongful purpose; (ii) knowingly without legal or factual justification; and (iii) in disregard of a known or obvious risk that is so great as to make it highly probable that the harm will outweigh the benefit." *Id.* § 247d-6d(c)(1). And the PREP Act identifies specific procedures for its willful misconduct claims. But the PREP Act specifically states that its definition of willful misconduct "shall be construed as establishing a standard of liability that is more stringent than a standard of negligence in any form or recklessness." *Id.* § 247d-6d(c)(1)(B).

The PREP Act also establishes exclusive federal jurisdiction for a willful misconduct claim, as defined by the PREP Act. *Id.* § 247d-6d((e)(1). The PREP Act states that any such action "shall be

filed and maintained only in the United States District Court for the District of Columbia." *Id.* § 247d-6d(e)(1). And the PREP Act identifies specific procedures to bring willful misconduct claims.

### 2. *The Secretary's Declaration Concerning COVID-19*

In March 2020, the Secretary issued a declaration under the PREP Act for countermeasures against COVID-19 (the "Declaration"). *See* Declaration Under the PREP Act for Medical Countermeasures Against COVID-19, 85 Fed. Reg. 15,198-01 (Mar. 17, 2020). In terms of identifying covered countermeasures, the Declaration stated:

> Covered Countermeasures are any antiviral, any other drug, any biologic, any diagnostic, any other device, or any vaccine, used to treat, diagnose, cure, prevent, or mitigate COVID-19, or the transmission of SARS-CoV-2 or a virus mutating therefrom, or any device used in the administration of any such product, and all components and constituent materials of any such product.

*Id.* at 15,202.

The Secretary has since issued various amendments to the Declaration, and the Department of Health and Human Services ("HHS") has issued advisory opinions and guidance letters concerning the Declaration and its amendments. These amendments, and the guidance from HHS, have identified additional covered countermeasures and covered persons. *See, e.g.*, Fourth Amendment to the Declaration, 85 Fed. Reg. 79,190-01, 79,194–196 (Dec. 9, 2020).

## B.  Federal Officer Removal

On appeal, Defendants assert that they properly removed this case to federal court, under § 1442(a)(1), because they acted under a federal officer.  Under § 1442(a)(1), a civil action, initiated in state court, may be removed to federal court by:

> The United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office or on account of any right, title or authority claimed under any Act of Congress for the apprehension or punishment of criminals or the collection of the revenue.

"If the statutory prerequisites are satisfied, section 1442(a)(1) provides an independent federal jurisdictional basis."  *Magnin v. Teledyne Cont'l Motors*, 91 F.3d 1424, 1427 (11th Cir. 1996).

Defendants are private entities; they are not, themselves, federal officers.  For a private entity to remove a case under § 1442(a)(1), the entity must show that it: (1) "is a person within the meaning of the statute who acted under a federal officer"; (2) "performed the actions for which it is being sued under color of federal office"; and (3) "raise[d] a colorable federal defense."  *Caver v. Cent. Ala. Elec. Coop.*, 845 F.3d 1135, 1142 (11th Cir. 2017).

Here, the "acted under a federal officer" prong is dispositive.  To "act[] under" a federal officer, the relevant act "must involve an effort to assist, or to help carry out, the duties or tasks of the federal superior."  *Watson v. Philip Morris Cos.*, 551 U.S. 142, 152 (2007)

(emphasis omitted). "In other words, the private person must help federal officers fulfill a basic governmental task that the government otherwise would have had to perform." *Caver*, 845 F.3d at 1143. And "the relationship between the private person and the federal officer must be one of 'subjection, guidance, or control.'" *Id*. (quoting *Watson*, 551 U.S. at 151). For example, we have found that a private person acted under a federal officer where the person was expressly delegated authority by the Federal Aviation Administrator under the Federal Aviation Act. *See Magnin*, 91 F.3d at 1428. And we have found that a private firm acted under a federal agency where the firm acted under an agreement with a federal agency to provide a service that the federal agency would have otherwise provided. *See Caver*, 845 F.3d 1143–44.

"A private firm's compliance (or noncompliance) with federal laws, rules, and regulations," however, "does not by itself fall within the scope of the statutory phrase 'acting under' a federal 'official.'" *Watson*, 551 U.S. at 153. "[T]hat is so even if the regulation is highly detailed and even if the private firm's activities are highly supervised and monitored." *Id*. For example, in *Watson*, the Supreme Court found that a cigarette manufacturer's compliance with government-required methods to test cigarettes was insufficient to show that the manufacturer was "acting under" a federal officer. *Id*. at 146–47, 157.

Turning to their argument, Defendants assert that, as part of the nation's critical infrastructure and as a program planner under the Secretary's COVID-19 Declaration, "the federal government

enlisted" Defendants "to aid it in fighting the virus' spread" and provided guidance on the measures Defendants should take to do so. Defendants' argument fails to satisfy § 1442's "acting under" requirement for four reasons.

First, recommendations, and even comprehensive regulations, on the protective measures Defendants should have taken are insufficient. *See Watson*, 551 U.S. at 153 (explaining that "highly detailed" regulations, and a high degree of "supervis[ion] and monitor[ing]," do not demonstrate that a private entity was "acting under" a federal officer); *Martin v. Petersen Health Operations, LLC*, 37 F.4th 1210, 1213 (7th Cir. 2022) ("Private firms retain their private character even when many aspects of their conduct are controlled by federal statutes and rules.").

Second, aside from allegedly complying with "order[s]" and "instruct[ions]" from the Secretary and HHS, Defendants have failed to show that they helped or assisted a federal agency to perform its duties or tasks. *See Watson*, 551 U.S. at 152 ("[T]he help or assistance necessary to bring a private person within the scope of the statute does *not* include simply *complying* with the law" (emphasis in original)); *see also Caver*, 845 F.3d at 1143. Unlike the private actor in *Magnin*, Defendants were not acting under an express delegation of authority to carry out a federal officer's duties. *See* 91 F.3d at 1428. And, unlike the private entity in *Caver*, Defendants did not contract with a federal agency to perform a service that the agency would have otherwise provided. *See* 845 F.3d at 1143–44. Because Defendants did "not assist or help carry out the duties of a

federal superior[,] . . . [were] not government contractors[,] . . . [did] not have [a] close relationship with the federal government[,] . . . [and were neither] delegated federal authority, nor . . . provide[d] a service that the federal government would otherwise provide," Defendants did not act under a federal officer. *See Maglioli*, 16 F.4th at 405.

Third, Defendants' alleged status as a program planner is irrelevant for federal officer removal. Instead, Defendants' alleged status as a program planner, and the authorities they cited in support, are relevant to immunity under the PREP Act. But Defendants' potential defense to liability under the PREP Act is not akin to a delegation of authority to carry out the PREP Act or to assisting in the provision of a service that the federal government would have otherwise provided.

Fourth, Defendants' status as a "member of the nation's critical healthcare infrastructure" also is irrelevant for purposes of federal officer removal. As our sister circuits have explained, many industries have been designated "as essential critical infrastructure," but in designating these industries as "critical," Congress did not "deputize all of these private-sector workers as federal officers." *Maglioli*, 16 F.4th at 406; *see Mitchell*, 28 F.4th at 590 ("[D]esignation of nearly the entire private economy as critical infrastructure cannot create the kind of relationship required for a private entity to utilize the federal officer removal statute."); *see also Buljic v. Tyson Foods, Inc.*, 22 F.4th 730, 739 (8th Cir. 2021) ("Tyson conflates the federal government's designation of the 'food and agriculture'

sector as critical infrastructure with a finding that Tyson was ful-filling a basic governmental task."), *cert. denied*, 143 S. Ct. 773 (2023).

We, like our sister circuits that have addressed nearly iden-tical arguments, therefore conclude that Defendants were not act-ing under a federal official. *See Maglioli*, 16 F.4th at 404–06; *Mitchell*, 28 F.4th at 589–91; *Martin,* 37 F.4th at 1212–13; *Saldana v. Glenhaven Healthcare LLC*, 27 F.4th 679, 684–86 (9th Cir. 2022), *cert. denied*, 143 S. Ct. 444 (2022). Instead, Defendants operated as a private assisted living facility that may, or may not, have complied with federal rec-ommendations and regulations concerning COVID-19.

## C. Complete Preemption

The second argument Defendants raise in favor of removal is that Plaintiffs' claims are completely preempted by the PREP Act. "Federal pre-emption is ordinarily a federal defense to the plaintiff's suit" that "does not authorize removal to federal court." *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 63 (1987). But complete preemption "is a doctrine distinct from ordinary preemption [and] . . . it is a narrowly drawn jurisdictional rule for assessing federal removal jurisdiction when a complaint purports to raise only state law claims." *Geddes v. Am. Airlines, Inc.*, 321 F.3d 1349, 1353 (11th Cir. 2003).

"Complete preemption occurs when a federal statute both preempts state substantive law and 'provides the exclusive cause of action for the claim asserted.'" *Dial v. Healthspring of Ala., Inc.*, 541 F.3d 1044, 1047 (11th Cir. 2008) (quoting *Anderson*, 539 U.S. at 8).

Accordingly, the Supreme Court has explained that it "has found complete pre-emption" where "the federal statute[] at issue provided the exclusive cause of action for the claim asserted and also set forth procedures and remedies governing that cause of action." *Anderson*, 539 U.S. at 8. Complete preemption, however, is rare.

To determine whether a state-law cause of action is completely preempted, we "look[] beyond the complaint to determine if the suit is, in reality, 'purely a creature of federal law,'" such that the plaintiff's claim "creat[es] the federal question jurisdiction requisite to removal to federal court[]." *Geddes,* 321 F.3d at 1353 (quoting *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 393 (1987)). "[I]f an individual, at some point in time, could have brought his claim under [the relevant federal statute], and where there is no other independent legal duty that is implicated by a defendant's actions, then the individual's cause of action is completely pre-empted by that federal statute." *Aetna Health Inc. v. Davila*, 542 U.S. 200, 210 (2004). A federal cause of action alone is therefore insufficient; "[t]o give federal courts exclusive jurisdiction over a federal cause of action, Congress must, in an exercise of its powers under the Supremacy Clause, affirmatively divest state courts of their presumptively concurrent jurisdiction." *Yellow Freight Sys., Inc. v. Donnelly*, 494 U.S. 820, 823 (1990).

Here, Defendants primarily assert that "all claims arising from a serious injury or death related to a COVID-19 countermeasure" are completely preempted by the PREP Act. Defendants also assert that Plaintiffs' state-law causes of action amount to willful

misconduct claims under the PREP Act and thus Plaintiffs' claims are completely preempted. We address those arguments in turn.

  1.  *The PREP Act does not completely preempt all state law claims*

We address first Defendants' arguments that Plaintiffs' state-law causes of action amount to willful misconduct under the PREP Act and are thus completely preempted. As relevant to this appeal, the PREP Act: (1) provides an alternative claims process if a defendant is immune from liability under the PREP Act; and (2) creates a cause of action for willful misconduct.

In providing a potential defense to liability (i.e., immunity under the PREP Act), however, Congress did not "affirmatively divest state courts of their" jurisdiction over state-law causes of action. *Donnelly*, 494 U.S. at 823. And the PREP Act's willful misconduct cause of action—in cases where immunity otherwise applies—is not a catchall cause of action; it is limited to "an act or omission that is taken—(i) intentionally to achieve a wrongful purpose; (ii) knowingly without legal or factual justification; and (iii) in disregard of a known or obvious risk that is so great as to make it highly probable that the harm will outweigh the benefit." 42 U.S.C. § 247d-6d(c)(1)(A). Indeed, the PREP Act specifically states that its definition of willful misconduct "shall be construed as establishing a standard of liability that is more stringent than a standard of negligence in any form or recklessness." *Id.* § 247d-6d(c)(1)(B). State-law causes of action that fall outside the PREP Act's definition of willful misconduct, including state-law causes of action for negligence, do not have a "parallel federal cause of

action" under the PREP Act.  *Hudson Ins. Co. v. Am. Elec. Corp.*, 957
F.2d 826, 830 (11th Cir. 1992) (holding that state-law cause of action
was not completely preempted "because [the] potential state cause
of action against Hudson ha[d] no preemptive parallel federal coun-
terpart").  The PREP Act therefore cannot "wholly displace[]"
every "state-law cause of action through complete preemption."
*Dial*, 541 F.3d at 1047 (quoting *Anderson*, 539 U.S. at 8–9).

We thus conclude and agree with our sister circuits that the
PREP Act, including its compensation fund, does not create a gen-
eral cause of action that would completely preempt all state law
claims related to COVID-19 and countermeasures taken, or not
taken, to prevent the virus's spread.  *See Mitchell*, 28 F.4th at 587.
*Accord Saldana*, 27 F.4th at 688 (rejecting the "argument that Con-
gress intended the [PREP] Act to completely preempt all state-law
claims related to the pandemic").[4]

---

[4] As previously discussed, the Secretary and HHS have made amendments to
the Secretary's Declaration.  The amendments to the Declaration—but not
the PREP Act itself—also contain statements suggesting that the PREP Act
broadly preempts state law.  For example, the Secretary's fifth amendment to
the Declaration states that "[t]he plain language of the PREP Act makes clear
that there is complete preemption of state law."  Fifth Amendment to Decla-
ration, 86 Fed. Reg. 7,872-02, 7,874 (Feb. 2, 2021).  But these conclusory opin-
ions about federal subject matter jurisdiction are not entitled to deference.  *See*
*Maglioli*, 16 F.4th at 403–04 (holding that "[t]he Secretary's position on the ju-
risdiction of the federal courts is not entitled to deference" and citing cases for
the proposition that "[f]ederal courts routinely conclude that no deference is
owed" to federal agencies' interpretations of federal-court jurisdiction).

If all this were not enough, Plaintiffs provide another reason why we must reject Defendants' complete preemption argument: causation. As we have explained, the PREP Act provides that, when the Secretary of Health and Human Services publishes a declaration recommending that certain covered countermeasures be taken in response to a public-health emergency, "a covered person shall be immune from suit and liability under Federal and State law with respect to all claims for loss *caused by, arising out of, relating to, or resulting from the administration to or the use by an individual of a covered countermeasure.*" 42 U.S.C. § 247d-6d(a)(1) (emphasis added). Ms. Schleider died in late June of 2020. At the time of her death, covered countermeasures included "any antiviral, any other drug, any biologic, any diagnostic, any other device, or any vaccine, used to treat, diagnose, cure, prevent, or mitigate COVID-19, or the transmission of SARS-CoV-2 or a virus mutating therefrom, or any device used in the administration of any such product, and all components and constituent materials of any such product." 85 Fed. Reg. 15,198, 15,202 (Mar. 17, 2020).[5]

For a covered person to have immunity under the PREP Act, there must be some nexus—some "causal relationship"—between the claimed loss and the administration or use of a covered countermeasure. *See* § 247d-6d(a)(2)(B) ("The immunity under paragraph (1) applies to any claim for *loss that has a causal relationship* with the administration to or use by an individual of a covered

---

[5] Additional covered countermeasures were subsequently added to this list. *See, e.g.,* Fed. Reg. 79,190, 79,194−96 (Dec. 9, 2020).

countermeasure, *including a causal relationship* with the design, development, clinical testing or investigation, manufacture, labeling, distribution, formulation, packaging, marketing, promotion, sale, purchase, donation, dispensing, prescribing, administration, licensing, or use of such countermeasure.") (emphasis added).  This causal relationship is captured by the phrases found in § 247d-6d(a)(1): "caused by," "arising out of," "relating to," and "resulting from."

Plaintiffs expressly allege in their complaint that Defendants did not take or implement any covered countermeasures under the PREP Act to prevent the spread of COVID-19 at Ms. Schleider's facility.  Plaintiffs also attach and cite to an administrative complaint filed in July of 2020 by Florida's Agency for Health Care Administration against GVDB Operations, LLC d/b/a Grand Villa of Delray East.  That administrative complaint alleged in part that Defendants failed to follow infection control guidelines issued by the Centers for Disease Control and Prevention, failed to carry out administrative oversight, failed to implement timely procedures to eliminate the spread of COVID-19 in the memory care unit upon notification of the first confirmed cases, and failed to implement and maintain infection control mechanisms to protect from a known threat.  Plaintiffs repeated these same allegations from the AHCA complaint in their own complaint.  For example, they specifically alleged in Count I (a survival claim under Fla. Stat. § 429.28) and Count II (a wrongful death claim under Fla. Stat. §

429.28) that Defendants acted negligently in, among other things, failing to implement proper COVID-19 prevention precautions.[6]

These allegations in the complaint control for purposes of the preemption analysis. *See Caterpillar*, 482 U.S. at 396–97. And as the Sixth Circuit has explained, "an allegation that [a defendant] *failed* to use a COVID-19 countermeasure [like] . . . facemasks . . . or to administer another [like] . . . an infection protocol . . . differs in kind from an allegation that [the defendant's] *administration* or [the patient's] *use* of those countermeasures caused [her] death." *Hudak v. Elmcraft of Sagamore Hills*, 58 F.4th 845, 856 (6th Cir. 2023). So if Defendants here failed to implement, administer, or use any covered countermeasure, then the death of Ms. Schleider was not "caused by," and did not "aris[e] out of," or "relat[e] to," or "result[] from" the "administration to or the use of . . . a covered counter-measure." § 247d-6d(a)(1).

All of this means that Defendants here—at least at this stage of the case—are not entitled to immunity under the PREP Act, which requires a causal relationship to the use or administration of a covered countermeasure. *See* § 247d–6d(a)(2)(B). We agree with the Fifth, Sixth, and Seventh Circuits and a number of district courts on this point. *See, e.g., Manyweather v. Woodlawn Manor, Inc.*, 40 F.4th 237, 245–46 (5th Cir. 2022); *Hudak*, 58 F.4th at 855–56; *Martin*, 37 F.4th at 1213–14; *Pirotte v. HCP Prairie Vill. KS OPCO LLC*,

---

[6] Plaintiffs also alleged in Counts I and II that Defendants' conduct rose to the level of willful misconduct or gross negligence, but those allegations were pled in the alternative.

580 F. Supp. 3d 1012, 1023–24 (D. Kan. 2022); *Khalek v. South Denver Rehab., LLC*, 543 F. Supp. 3d 1019, 1027–28 (D. Colo. 2021).

   2. *Plaintiffs' state-law causes of action are not completely preempted*

   As noted, the PREP Act provides exclusive federal jurisdiction for its willful misconduct cause of action. *See* 42 U.S.C. § 247d-6d(e)(1). But Plaintiffs did not assert an explicit claim for willful misconduct under, and as defined by, the PREP Act. Instead, Plaintiffs asserted state-law causes of action for survival and wrongful death under Florida Statute § 429.28. On appeal, we must therefore determine whether the PREP Act's willful misconduct cause of action completely preempts the state-law causes of action brought by Plaintiffs. *See Anderson*, 539 U.S. at 8. In so doing, we must consider whether Plaintiffs' state-law causes of action are "in reality, 'purely a creature of'" the PREP Act's willful misconduct cause of action. *Geddes*, 321 F.3d at 1353 (quoting *Caterpillar*, 482 U.S. at 393).

   Under Florida law, a "'[c]laim for residents' rights violation' . . . means a negligence claim alleging injury to or the death of a resident arising out of an asserted violation of the rights of a resident under § 429.28 or an asserted deviation from the applicable standard of care." Fla. Stat. § 429.293(1)(a). And to recover either survival or wrongful death damages, the remedies specified in Plaintiffs' complaint, Plaintiffs must allege "a claim for the resident's rights or for negligence." *Id.* § 429.29.

   Here, in support of their Florida Statute § 429.28 claims, Plaintiffs alleged that Defendants acted negligently by failing to act

"reasonably in the care of" Sara Schleider.  Plaintiffs also alleged Defendants' negligence was the proximate cause of their injuries and damages.  In asserting state-law causes of action for negligence, under a negligence theory of liability, Plaintiffs have asserted "rights and obligations [that are] independent of" the PREP Act's definition of willful misconduct.  *Caterpillar*, 482 U.S. at 395; *see* 42 U.S.C. § 247d-6d(c)(1)(A) ("The criterion stated in [the PREP Act's definition of willful misconduct] establish[es] a standard of liability that is more stringent than a standard of negligence in any form").

To be sure, within their causes of action under Florida Statute § 429.28, Plaintiffs also alleged that Defendants' "conduct rose to the level of willful misconduct or gross negligence."  And Defendants contend that those allegations of willful misconduct are completely preempted.  But complete preemption—a removal doctrine distinct from ordinary preemption—"is rare."  *Maglioli*, 16 F.4th at 408.  Complete preemption of a state-law cause of action only occurs where "a federal statute wholly displaces th[at] state-law cause of action," *Anderson*, 539 U.S. at 8—i.e., where "an individual . . . could have brought his claim under" a federal statute that converts his state-law causes of action into a federal claim "and where there is no other independent legal duty that is implicated by [the] defendant's actions," *Davila*, 542 U.S. at 210.

For example, in *Davila*, the Supreme Court determined that the Employment Retirement Income Security Act ("ERISA") completely preempted the relevant plaintiffs' state-law causes of action. *Id.* at 221.  In so doing, the Supreme Court first looked to the federal

statute and determined that "ERISA includes expansive pre-emp-
tion provisions, which are intended to ensure that employee bene-
fit plan regulation would be 'exclusively a federal concern.'"  *Id.* at
208 (citation omitted) (quoting *Alessi v. Raybestos–Manhattan, Inc.*,
451 U.S. 504, 523 (1981)).  The Supreme Court then sought to de-
termine whether the plaintiffs' "causes of action [fell] 'within the
scope' of ERISA" by examining the plaintiffs' complaints and the
relevant state-law causes of action.  *Id.* at 211.  As to the plaintiffs'
complaints, the Supreme Court determined that "the only action[s]
complained of" concerned the "administration of . . . ERISA-regu-
lated benefit plan[s]."  *Id.*  As to the relevant state-law causes of
action, the Supreme Court held that "[t]he duties imposed . . . do
not arise independently of ERISA" because "the failure of the
[ERISA-regulated] plan itself to cover the requested treatment
would be the proximate cause of" the plaintiffs' injuries for their
state-law causes of action.  *Id.* at 212–13.  The Supreme Court
therefore held that the plaintiffs' claims were completely
preempted, and were removable to federal court, because they
brought their "suit only to rectify a wrongful denial of benefits
promised under ERISA-regulated plans, and [did] not attempt to
remedy any violation of a legal duty independent of ERISA."  *Id.* at
214.

 Similarly, in *Anderson*, the Supreme Court held that the rel-
evant plaintiffs' claims were completely preempted because they
asserted state-law claims for usury against national banks and "the
National Bank Act . . . provide[s] an exclusive federal cause of ac-
tion for usury against national banks."  *539* U.S. at 10–11.

Accordingly, the Supreme Court found that there could be "no such thing as a state-law claim of usury against a national bank" and thus concluded that the plaintiffs' cause of action against national banks "only [arose] under federal law and could . . . be removed." *Id.* at 11.

In contrast to the acts examined in *Davila* and *Anderson*, the PREP Act does not broadly preempt all state-law claims concerning COVID-19 countermeasures—although it does provide a defense to liability against those claims—and the PREP Act's cause of action for willful misconduct does not preempt state-law causes of action, like Florida Statute § 429.28, for negligence. And in further contrast, Plaintiffs' Florida Statute § 429.28 claims—which allege that Defendants acted negligently and that Defendants' negligence proximately caused Plaintiffs' injuries—complain of actions that are outside the scope of the PREP Act's cause of action for willful misconduct.[7] In other words, Plaintiffs have not brought their "suit only to rectify" willful misconduct under the PREP Act because they are "attempt[ing] to remedy [a] violation of a legal duty independent of" the PREP Act's cause of action for willful misconduct—i.e., Defendants' duty to exercise non-negligent care under Florida Statute § 429.28. *Cf. Davila*, 542 U.S. at 210–14.

---

[7] Because Plaintiffs alleged that Defendants are liable for violating Florida Statute § 429.28 under a negligence theory of liability, we need not decide whether the PREP Act would preempt a claim, under Florida Statute § 429.28, premised exclusively on willful misconduct.

Therefore, the PREP Act's willful misconduct cause of action does not completely preempt, i.e., "wholly displace[]," Plaintiffs' "state-law cause[s] of action" for survival and wrongful death under Florida Statute § 429.28. *Dial*, 541 F.3d at 1047 (quoting *Anderson*, 539 U.S. at 8–9). And Plaintiffs' allegations of willful misconduct, within their broader state-law causes of action for negligence under Florida Statute § 429.28, do not convert Plaintiffs' state-law claims into claims that are completely preempted by the PREP Act's narrow cause of action for willful misconduct.[8] *See, e.g.*, *Maglioli*, 16 F.4th at 411 (holding that the plaintiffs' state-law causes of action for negligence "could not have [been] brought . . . under § 247d-6d(d)(1) of the PREP Act," notwithstanding the plaintiffs' allegations that the defendants "conduct was grossly reckless, willful, and wanton"); *Solomon v. St. Joseph Hosp.*, 62 F.4th 54, 61 (2d Cir. 2023) ("[C]laims for medical malpractice, negligence, and gross negligence are plainly not 'within the scope' of willful misconduct [under the PREP Act]."); *Hudak*, 58 F.4th at 855 ("[T]he PREP Act

---

[8] At oral argument, Plaintiffs conceded that they included these allegations to support a future claim for punitive damages. (Oral Arg. Recording, 21-11765.mp3 at 26:00–26:30.) But Plaintiffs have not yet asserted an independent claim for willful misconduct, and a claim for willful misconduct does not appear to be a prerequisite for recovering punitive damages. *See* Fla. Stat. § 429.29 (stating that a plaintiff may seek "punitive damages for violation of the rights of a resident or negligence"). In any event, speculation as to a future claim for willful misconduct is not grounds for removal. *See Caterpillar*, 482 U.S. at 398 ("The fact that a defendant might ultimately prove that a plaintiff's claims are pre-empted . . . does not establish that they are removable to federal court.").

does not create a federal cause of action for all claims arising under the Act."); *Saldana*, 27 F.4th at 688 ("But finding that one claim *may* be preempted is different than finding that the federal statutory scheme is so comprehensive that it *entirely supplants* state law causes of action, such as the Saldanas' other causes of action for elder abuse, custodial negligence, and wrongful death.") (citation and internal quotation marks omitted).

In sum, because Plaintiffs' state-law causes of action for negligence under Florida Statute § 429.28 cannot be brought under the PREP Act's cause of action for willful misconduct, Plaintiffs' state-law causes of action are not completely preempted by that cause of action. Indeed, Defendants seem to concede that if Plaintiffs' isolated allegations of willful misconduct, within their broader causes of actions under Florida Statute § 429.28, are preempted by the PREP Act's cause of action for willful misconduct, then Plaintiffs will still have "residual negligence claims." Defendants' preemption argument is therefore an ordinary preemption defense—i.e., that Plaintiffs' claims should be dismissed to the extent that they are asserting claims for willful misconduct under the PREP Act, not that Plaintiffs' claims under Florida Statute § 429.28 are wholly displaced by the PREP Act's cause of action for willful misconduct. And "a case may *not* be removed to federal court on the basis of" an ordinary federal preemption defense. *Geddes*, 321 F.3d at 1352–53 (emphasis in the original).

### D.  Embedded Federal Question

Defendants' final argument in favor of removal is that Plaintiffs' claims raise an embedded federal question concerning "the application or non-application of the PREP Act." In support of this argument, Defendants rely on *Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing*, 545 U.S. 308 (2005).

In *Grable*, the Supreme Court recognized that "in certain cases federal-question jurisdiction will lie over state-law claims that implicate significant federal issues." 545 U.S. at 312. This doctrine "captures the commonsense notion that a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law." *Id.* But federal courts have rejected a more "expansive view that [the] mere need to apply federal law in a state-law claim will suffice" to trigger the doctrine. *Adventure Outdoors, Inc.*, 552 F.3d at 1300 (quoting *Grable*, 545 U.S. at 313).

The *Grable* doctrine provides that even when a state court complaint pleads only state law causes of action "federal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn v. Minton*, 568 U.S. 251, 258 (2013).

However, the *Grable* doctrine is "still governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar Inc.*, 482 U.S. at 392. A plaintiff invoking *Grable* as the basis for federal jurisdiction

must still show that the alleged federal issue arises on the face of the complaint. "Th[is] rule makes the plaintiff the master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law." *Id*.

Here, Plaintiffs have asserted claims that arise under Florida's "Resident bill of rights" for assisted living facilities. Defendants contend that federal jurisdiction exists under *Grable* because of the application of the PREP Act to Plaintiffs' claims based on two of Defendants' potential defenses to liability: (1) ordinary preemption under the PREP Act; and (2) immunity under the PREP Act. We conclude that this argument fails, and that *Grable* does not confer federal jurisdiction. First, the complaint does not satisfy the well-pleaded complaint rule. No federal claim appears on the face of the state court complaint. Second, the application of the PREP Act to Plaintiffs' claims based on potential defenses of ordinary preemption and immunity under the PREP act do not confer federal jurisdiction under *Grable*. These defenses cannot support federal jurisdiction. Indeed, it is a bedrock principle that a complaint "brought upon a state statute does not arise under an act of Congress or the Constitution of the United States." *Gully v. First Nat. Bank in Meridian*, 299 U.S. 109, 116 (1936). And it is established law that "[a] defense that raises a federal question is inadequate to confer federal jurisdiction." *Merrell Dow Pharm. Inc. v. Thompson*, 478 U.S. 804, 808 (1986). Indeed, "it is now settled law that a case may *not* be removed to federal court on the basis of a federal defense, including the defense of preemption, even if the defense is anticipated in the plaintiff's complaint, and even if both parties

concede that the federal defense is the only question truly at issue." *Caterpillar Inc.*, 482 U.S. at 393. This type of defensive preemption, sometimes called "ordinary preemption," which "asserts that the state claims have been substantively displaced by federal law," is also subject to the well-pleaded complaint rule. *See Geddes*, 321 F.3d at 1352. Thus, while ordinary preemption provides an affirmative defense to state-law claims, it will not provide a basis for removal to federal court. *See Conn. State Dental Ass'n v. Anthem Health Plans, Inc.*, 591 F.3d 1337, 1343-44 (11th Cir. 2009).

"*Grable* emphasized that it takes more than a federal element 'to open the "arising under" door.' This case cannot be squeezed into the slim category *Grable* exemplifies." *Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. 677, 701 (2006) (citation omitted). We thus conclude that the district court correctly determined that *Grable* does not provide a basis for federal jurisdiction.

## V.    CONCLUSION

For all these reasons, we affirm the district court's order remanding this case to state court.

**AFFIRMED.**

Luck, Circuit Judge, dissenting:

## I.

I agree with the majority opinion on the complete preemption basics. I agree that *Aetna Health Inc. v. Davila*'s two-part test determines if the doctrine applies—we must ask if (1) Congress has created an exclusive federal cause of action and (2) the plaintiff alleged a state-law "claim [that] comes within the scope of [it]." 542 U.S. 200, 207–08 (2004) (quoting *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 8 (2003)).

I also agree with the majority opinion on how *Davila* prong one applies to this case. The PREP Act creates an exclusive federal cause of action against covered persons. *See* 42 U.S.C. § 247d-6d(d)(1). The cause of action, as the majority opinion concludes, is not a "catchall" that completely preempts all state-law claims related to COVID-19 and countermeasures taken or not taken. Instead, the PREP Act's "exclusive [f]ederal cause of action" is "for death or serious physical injury proximately caused by willful misconduct . . . by [a] covered person." *Id.*

But where I part from the majority opinion is on *Davila* prong two. Under the second prong, a state-law claim is "within the scope of" an exclusively federal one "if [the plaintiff], at some point in time, could have brought his claim under [the exclusive cause of action], and where there is no other independent legal duty that is implicated by a defendant's actions." *Davila*, 542 U.S. at 210 (citation omitted).

The majority opinion concludes that prong two is satisfied only if a plaintiff alleges claims that are "purely . . . creature[s] of the PREP Act's willful-misconduct cause of action" or are "wholly displace[d]" by it. The majority opinion then says that the complaint in this case lacks purely federal claims because, although *parts* of the four Assisted Living Facilities Act counts alleged willful misconduct, other parts of them alleged negligence. In other words, the majority opinion concludes that *Davila* prong two isn't satisfied because no claim seeks to exclusively or "only . . . rectify willful misconduct." But *Davila* prong two doesn't require that the state-law claims precisely duplicate the PREP Act's cause of action. So long as at least some portions of the claims alleged willful misconduct within the PREP Act's scope, that's enough.

That's the approach we've taken when applying *Davila* prong two in the ERISA context. In *Connecticut State Dental Association v. Anthem Health Plans, Inc.*, for example, two plaintiff-dentists contracted with the defendant health-plan provider "to provide professional services in exchange for compensation." 591 F.3d 1337, 1342 (11th Cir. 2009). The plan provider allegedly underpaid the dentists, so they filed a five-count complaint asserting state-law claims for breach of contract, breach of the duty of good faith and fair dealing, unfair trade practices, negligent misrepresentation, and unjust enrichment. *Id.* The provider removed the case to federal court and the district court denied the dentists' motion to remand. *Id.*

We affirmed the district court's denial because ERISA created an exclusive cause of action and "portions of the[ dentists'] claims" fell within the scope of it.[1]  *Id.* at 1343–44, 1350–53.  The claims' substance, we explained, implicated whether the dentists had a "right of payment" under the provider contracts and, if so, the "rate of payment" the dentists were due.  *Id.* at 1350–51.  The right of payment allegations "concern[ed] coverage issues that [fell] within ERISA" but the rate of payment ones did not.  *Id.*  (citing *Lone Star OB/GYN Assocs. v. Aetna Health Inc.,* 579 F.3d 525, 531 (5th Cir. 2009)).  Faced with what was "really a hybrid claim, part of which [wa]s within [ERISA] and part of which [wa]s beyond the scope of ERISA," we still concluded *Davila* prong two was satisfied.  *Id.* at 1350–53.  It was enough that the right of payment allegations "stray[ed] from the boundaries of the[ p]rovider [a]greements into ERISA territory" although the rate of payment ones "[we]re based on a separate legal duty."  *Id.* at 1353.  With *Davila* satisfied as to parts of the claims, there was federal jurisdiction over the entire suit.  *Id.* ("[W]here removal jurisdiction exists over a completely preempted claim, the district court has jurisdiction over any claims joined with the preempted claim." (citations omitted)).

We applied *Davila* prong two the same way in *Borrero v. United Healthcare of New York, Inc.,* 610 F.3d 1296 (11th Cir. 2010).  The *Borrero* complaints asserted state-law claims based on

---

[1] We reversed the denial as to a separate complaint filed by a dental association.  *Conn. State Dental*, 591 F.3d at 1357.

"[*m*]*any . . . allegations . . .* , for practices like downcoding and bundling," that "*d*[*id*] *not implicate ERISA.*" *Id.* at 1304–05 (emphasis added).  Pointing to those allegations, "based predominantly on [provider] contracts," the plaintiffs argued none of their claims were completely preempted by ERISA.  *Id.* at 1303–04.  But even with the many non-ERISA downcoding and bundling allegations, "*at least some* of the allegations"—those regarding "wrongfully denied benefits"—"[we]re dependent on ERISA, [and] *those claims* [we]re completely preempted."  *Id.* at 1304–05 (emphasis added); *see also id.* at 1303 (reasoning that the plaintiffs "ha[d] not pursued exclusively state law claims, but instead ha[d] cast their pleadings in a way that implicate[d] federal law as well").  So, we concluded, federal jurisdiction existed to entertain the entire suit.  *See id.* at 1304 ("This gives a federal court federal question jurisdiction over th[e preempted] claims and supplemental jurisdiction over the remaining claims.").

Our approach in *Connecticut State Dental* and *Borrero* is consistent with the Supreme Court's.  In *Davila*, for example, the Supreme Court explained that prong two is satisfied so long as a state-law claim could've been brought under federal law and is at least *partially* dependent on it.  *See* 542 U.S. at 213–14 (concluding the plaintiffs' claims fell within ERISA's scope because "interpretation of . . . [their] benefit plans form[ed] an essential part of their [state-statutory] claim").  It's only when a state-law claim is "*entirely* independent" that it falls outside the scope of an exclusive cause of action.  *Id.* (emphasis added) ("[The defendants]' potential

liability . . . derives entirely from the particular rights and obligations established by the benefit plans.  So, unlike the state-law claims in *Caterpillar [Inc. v. Williams*, 482 U.S. 386 (1987), the plaintiffs]' causes of action are not entirely independent of the federally regulated contract itself.").  And, the Court continued, we cannot deem a state-law claim entirely independent simply because it's not "strictly duplicative" of a federal one or it "attempts to authorize remedies beyond those authorized by [a federal one]."  *Id.* at 214–16; *see id.* at 212–14 (rejecting the plaintiffs' argument that their state-statutory claim wasn't dependent on ERISA because the statute imposed a "duty of ordinary care" not provided for in ERISA or an ERISA plan); *id.* at 216 (citing *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 136 (1990), and *Metropolitan Life Insurance Co. v. Taylor*, 481 U.S. 58, 61 (1987), where the Court found ERISA preempted claims for "mental anguish" damages despite "there [being] no [mental anguish] element in an ordinary suit brought under ERISA"); *id.* at 214–15 (explaining again that the Court has found complete preemption where the plaintiffs "sought remedies [under state law] beyond those authorized under ERISA").  Requiring strict duplicates "would elevate form over substance" and risk undermining Congress's intent to make certain federal remedies exclusive.  *Id.* at 214–16 (marks and citation omitted).

Looking to the substance of plaintiffs' state-law claims here, *Davila* prong two is satisfied because "at least some portions" of the plaintiffs' claims are within the scope of the PREP Act's

exclusive cause of action for death caused by covered persons' willful misconduct. *See Conn. State Dental*, 591 F.3d at 1342; *see also Borrero*, 610 F.3d at 1303–05. Each count alleged that the defendant facility operators' "acts and omissions" caused Schleider's death from COVID-19.[2] And each count asserted that those acts and omissions "rose to the level of willful misconduct" and "w[ere] in disregard of a known or obvious risk that was so great as to make it highly probable that the harm [they] caused[] outweighed any actions [the operators] took." "Specifically," the plaintiffs alleged, the operators' conduct rose to willful misconduct in three ways: (1) they "[f]ailed to provide or require personal protective equipment to workers and residents," (2) they "[f]ailed to put in place adequate protection measures in the face of a global pandemic which put at high risk[] its patients," and (3) they "[w]ithheld information" from their staff, residents, and residents' family members. The plaintiffs even provided "[a] specific example" of the third theory—that the operators "refused to respond to . . . Schleider's family when they repeatedly requested information about her status and condition."

These willful misconduct allegations parrot the elements of a PREP Act cause of action. 42 U.S.C. § 247d-6d(d)(1) (creating the exclusive cause of action "*against a covered person* for death . . . *proximately caused by willful misconduct* . . . by such

---

[2] Plaintiffs conceded during oral argument that the operators are "covered persons." *See* 42 U.S.C. § 247d-6d(d)(1), (i)(2).

covered person" (emphasis added)); *id.* § 247d-6d(c)(1)(A) (listing the cause of action's elements as "an *act or omission* that is taken . . . intentionally to achieve a wrongful purpose," "*know-ingly*" without justification, and "*in disregard of a known or obvi-ous risk* that is so great as to make it highly probable that the harm will outweigh the benefit" (emphasis added)). Indeed, the plaintiffs conceded during oral argument that they alleged willful miscon-duct to pursue punitive damages under Florida's Assisted Living Facilities Act, which required that "the defendant had actual knowledge of the wrongfulness of the conduct and the high prob-ability that injury or damage to the claimant would result and, de-spite that knowledge, intentionally pursued that course of con-duct." *See* Fla. Stat. § 429.297(2)(a). This is a close match with the "willful misconduct" required under the PREP Act's exclusive cause of action. *See* 42 U.S.C. § 247d-6d(c)(1)(A).

To be sure, the plaintiffs' claims also include many negli-gence allegations beyond the scope of the PREP Act's cause of ac-tion. But we found *Davila* prong two was satisfied although the *Borrero* claims were based on "[m]any . . . allegations" not within the scope of the federal action. *Borrero*, 610 F.3d at 1304–05. And we found *Davila* prong two was satisfied in *Connecticut State Den-tal* although "part[s] of" the claims were "beyond the scope" of the federal action. *Conn. State Dental*, 591 F.3d at 1351; *see also id.* at 1342, 1350–51 (noting that "[t]he crux of the allegations" was un-derpayment, but a "closer look" showed the allegations also con-cerned the plaintiffs' right of payment under ERISA). We should

do the same here. The plaintiffs' claims are not "entirely independent of the" PREP Act, *see Davila*, 542 U.S. at 213–14, because the willful misconduct allegations "stray . . . into [PREP Act] territory," *see Conn. State Dental*, 591 F.3d at 1353. Because parts of the claims strayed into PREP Act territory, the district court had jurisdiction over the entire suit—including supplemental jurisdiction over the negligence parts. *See Conn. State Dental*, 591 F.3d at 1353; *Borrero*, 610 F.3d at 1304–05.

## II.

As an alternative reason for finding that *Davila* prong two was not satisfied, the majority opinion concludes that omissions—the failure to administer or use covered countermeasures—fall outside the scope of the PREP Act. Because it views the plaintiffs' complaint as alleging only omissions rather than affirmative acts, the majority opinion concludes that the facility operators "are not entitled to immunity under the PREP Act" and, therefore, none of the claims are completely preempted by the Act. For two reasons, I think the majority opinion's alternative reason for affirming misses the mark.

First, the PREP Act's "exclusive [f]ederal cause of action" for "willful misconduct" includes willful "omission[s]." *See* 42 U.S.C. § 247d-6d(c)(1)(A), (d)(1). The PREP Act uses "act or *omission*" throughout the provisions defining this "exclusive [f]ederal cause of action." *See id.* (emphasis added). It's in the definition of "willful misconduct," *id* § 247d-6d(c)(1)(A); it's in the grant of regulatory authority to define the scope of the cause of action, *id.* § 247d-

6d(c)(2)(A); it's in the statutory defenses, *id.* § 247d-6d(c)(4); it's in the statutory exclusions, *id.* § 247d-6d(c)(5); and it's even in the statutory pleading requirements. *Id.* § 247d-6d(d)(3)(A).

Applying the exclusive federal cause of action's pleading requirements here, the complaint alleges that the facility operators' omissions related to the failure to administer or use covered countermeasures amounted to "willful misconduct" and caused Schleider's death from COVID-19. These alleged willful omissions could have been brought as a claim under the PREP Act's exclusive federal cause of action and do not involve an independent legal duty outside the PREP Act's scope. *See id.* § 247d-6d(c), (d). So, *Davila* part two is satisfied based on the alleged willful omissions alone. *See* 542 U.S. at 210.

The majority opinion reaches the conclusion that it does by focusing on the PREP Act's immunity provision instead of the provisions defining the scope of the exclusive federal cause of action. The facility operators "are not entitled to *immunity* under the PREP Act," the majority opinion says. But "immunity under the PREP Act" is a defense to liability and is separate and distinct from the scope of the exclusive federal cause of action. *See Geddes v. Am. Airlines, Inc.*, 321 F.3d 1349, 1352–53 (11th Cir. 2003) (explaining that affirmative defenses are irrelevant to complete preemption). "Rather than . . . a defense," complete preemption is a "jurisdictional rule" that is implicated "when a complaint purports to raise only state law claims" but actually raises claims within an exclusive federal cause of action, "transform[ing] the state claim[s]

into [federal] one[s]" for jurisdictional purposes. *See id.* at 1353. The relevant inquiry for complete preemption compares the allegations in the complaint to the statute creating the exclusive federal cause of action. *See, e.g., Conn. State Dental*, 591 F.3d at 1350–1354 (comparing ERISA's civil enforcement provision to the allegations in the plaintiffs' complaint). By looking to the immunity provision, the majority opinion overlooks the most relevant parts of the PREP Act defining the cause of action as including "omission[s]." *See* 42 U.S.C. § 247d-6(c), (d).

Second, even if the exclusive federal cause of action in the PREP Act only included acts and not omissions, the plaintiffs' complaint alleges affirmative "acts" (in addition to omissions) related to the administration and use of covered countermeasures. The complaint, for example, alleged that the facility operators denied employees' requests for covered countermeasures, that the facility operators' employees improperly used covered countermeasures, that the facility operators had training on the use of covered countermeasures but the training was inadequate, and that the facility operators denied its employees and its residents information about countermeasures. The complaint makes plain that it alleges acts of "malfeasance," and those "acts . . . rose to the level of willful misconduct." So, even if "willful misconduct" somehow does not include willful "omission[s]," the complaint still falls within the scope of the PREP Act's exclusive federal cause of action because it alleges willful "acts" related to the administration and use of covered countermeasures. *See* 42 U.S.C. § 247d-6d(c)(1)(A), (d)(1).

### III.

Because I believe the plaintiffs' complaint is completely preempted by the exclusive federal cause of action in the PREP Act, I respectfully dissent.